**UNITED STATED DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **HAL HAYNES BIBEE, SR., Administrator of** **)** | |
| **the Estate of Brian Sullivan Bibee; and** **)** | |
| **HAL HAYNES BIBEE, SR. and** **)** | |
| **SHERON BIBEE, individually and as** **}** | |
| **next of kin to BRIAN S. BIBEE,** **}** | |
| **}** | |
| **PLAINTIFFS,** **}** | **CASE NO.** |
| **}** | |
| **v.** **}** | **Jury Demanded** |
| **}** | |
| **CITY OF BRISTOL, Tennessee,** **}** | |
| **A government entity,** **}** | |
| **MATT AUSTIN, Individually,** **}** | |
| **SHANNON BARKER, individually,** **}** | |
| **LOGAN CONDRA, individually, and** **}** | |
| **JONATHAN KETRON, individually** **}** | |
| **}** | |
| **DEFENDANTS.** **}** | |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND WRONGFUL DEATH**

Plaintiffs, Hal Haynes Bibee, Sr., Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin to Brian S. Bibee, deceased, bring this civil action under the laws of the State of Tennessee, the Fourth and Fourteenth Amendment to the United States Constitution and the provisions of 42 U.S.C. § 1983 against Defendants Shannon Barker ("Officer Barker"), individually, Logan Condra ("Officer Condra"), individually, Jonathan Ketron ("Officer Ketron"), individually, Bristol Police Department ("BTPD") Chief Matt Austin ("Chief Austin"), and the City of Bristol ("the City"), a governmental entity, to recover damages and other cognizable relief for the death of Brian S. Bibee on October 29, 2023, in Bristol, Sullivan County, Tennessee. In support of this complaint Plaintiffs state as follows:

# TABLE OF CONTENTS

I.      Parties.................................................................................................4

    A.  Plaintiffs..................................................................................4

    B.  Defendants

        1.  Shannon Barker...........................................................4

        2.  Logan Condra..............................................................4

        3.  Jonathan Ketron ..........................................................5

        4.  Chief Austin ................................................................5

        5.  City of Bristol Tennessee ............................................5

    C. Unnamed parties.......................................................................5

II.     Jurisdiction and Venue ....................................................................5

III.    Facts and Allegations ......................................................................6

    A.  Duties of Defendants.................................................................6

    B.  Prior Incidents and Notice .......................................................8

    C.  Brian Bibee ...........................................................................11

IV.     Waiver of Immunity.......................................................................21

V.      Claims for Relief............................................................................24

    Count One
    Violation of 42 U.S.C. § 1983, Deliberate Indifference -
    Failure to Protect (Officers Condra, Barker, and Ketron)....................................24

    Count Two
    Violation of 42 U.S.C. § 1983, Deliberate Indifference -
    Failure to Provide Medical Care
    (Officers Condra, Barker, and Ketron) ................................................28

    Count Three
    Failure to Train or Supervise Officers
    (City of Bristol and Chief Austin)........................................................32

Count Four
Wrongful Death - TENN. CODE ANN. §§ 20-5-106, et seq.
(Against all Defendants) ......................................................................36

Count Five
Negligence and/or Gross Negligence
(Against all Defendants) ......................................................................39

Count Six
Intentional Infliction of Emotional Distress
(Against Officers Condra, Barker, and Ketron)......................................40

Count Seven
*Monell* Liability - 42 U.S.C. §1983
(City of Bristol)...................................................................................41

VI. Jury Demand ......................................................................................45

VII. Prayer for Relief....................................................................................46

3

## I. PARTIES

1. At all times relevant hereto, Brian S. Bibee ("Brian") was a citizen and resident of Bristol, Sullivan County, Tennessee. He died, intestate, on October 29, 2023, survived by his parents, Hal Haynes Bibee, Sr. and Sheron Bibee.

2. Plaintiff Hal Haynes Bibee, Sr. is the Administrator of the Estate of Brian Sullivan Bibee by virtue of the Order and Letter of Administration entered by the Chancery Court of Sullivan County at Blountville, Tennessee, on October 10, 2024. Copies of the Order and Letter of Administration are attached hereto as Exhibit No. 1.

3. Plaintiff Hal Haynes Bibee, Sr., individually, is the father, parent and next of kin to Brian Bibee, deceased, and is a citizen and resident of Knox County, Tennessee.

4. Plaintiff Sheron Bibee, individually, is the mother, parent and next of kin to Brian S. Bibee, deceased, and is a citizen and resident of Knox County, Tennessee.

5. Defendant Shannon Barker ("Officer Barker"), was, at all times relevant hereto, a police officer for the City of Bristol, Tennessee, and acting under color of law. He is sued individually and as principal on, if any, his official bond. Upon information and belief, Officer Barker is a citizen and resident of Sullivan County and may be served with process at the Bristol Tennessee Police Department ("BTPD"), 801 Anderson Street, Bristol, Tennessee 37620.

6. Defendant Logan Condra ("Officer Condra") was, at all times relevant hereto, a police officer for the City of Bristol, Tennessee, and acting under color of law. He is sued individually and as principal on, if any, his official bond. Upon information and belief, Officer Condra is a citizen and resident of Sullivan County and may be served with process at the BTPD, 801 Anderson Street, Bristol, Tennessee 37620.

7.  Defendant Jonathan Ketron ("Officer Ketron") was, at all times relevant hereto, a police officer for the City of Bristol, Tennessee, and acting under color of law. He is sued individually and as principal on, if any, his official bond. Upon information and belief, Officer Ketron is a citizen and resident of Sullivan County and may be served with process at the BTPD, 801 Anderson Street, Bristol, Tennessee 37620.

8.  Defendant Matt Austin ("Chief Austin"), was, at all times relevant hereto, a police officer and Chief of Police for the City of Bristol, Tennessee, and acting under color of law. He is sued individually and as principal on, if any, his official bond. Upon information and belief, Chief Austin is a citizen and resident of Sullivan County and may be served with process at the BTPD, 801 Anderson Street, Bristol, Tennessee 37620.

9.  Defendant City of Bristol ("City") is located in Bristol, Sullivan County, Tennessee, and operates the Bristol Tennessee Police Department ("BTPD"). Defendant City is a political subdivision of the State of Tennessee, the duly formed municipal government for, and the political entity that governs Bristol, Tennessee. The City may be served with process at the BTPD through Kelli Bourgeois, City Manager, at 801 Anderson Street, Bristol, Tennessee 37620.

10.  Various persons not made Defendants, including City and BTPD officials, have participated in violations asserted herein and performed acts or made statements in furtherance thereof. Plaintiffs reserve the right to name some or all of these persons as Defendants, as they become known. There is a finite number of co-conspirators and Plaintiffs believe that their identities may be ascertained through Defendants' own records.

## II. JURISDICTION AND VENUE

11.  Jurisdiction is proper before this Court under 28 U.S.C. §1331 and §1343 because Plaintiffs seek damages and other remedies under federal law and this action is specifically brought

5

to redress alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments of the United States Constitution.

12. This Court has supplemental jurisdiction over state law claims for violations of related Tennessee statutory and common law torts under 28 U.S.C. §1367, as such claims are so related to claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the Tennessee Constitution.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b), as all incidents, events, and occurrences giving rise to the action occurred in Sullivan County, within the Northeastern Division of the Eastern District of Tennessee.

### III. FACTS AND ALLEGATIONS

14. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

### Duties of Defendants

15. Defendant City of Bristol is a municipality in Tennessee and a government agency and political subdivision that operates the Bristol Police Department (BTPD). The City possesses the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of training, supervision, control, employment, assignment, and removal of individual members of the BTPD, which consists of seventy-three full-time sworn officers, ten sworn part-time officers and twenty-seven civilian personnel.

16. The City has the duty and authority to assure that the aforesaid actions, and all other policies, rules, regulations, practices and procedures of the BTPD and its employees and agents comply with the laws and constitutions of the United States and the State of Tennessee.

6

17. The City is responsible for the policies, procedures and practices implemented through its agents, departments and employees and for any injuries occasioned as a result of a deviation from or violation of the same.

18. Defendant City and the BTPD are responsible for training its agents, departments, and employees on the use of emergency procedures, including the use of Narcan in suspected drug overdoses.

19. The City, the BTPD, and the Defendant Officers Condra, Barker and Ketron ("Defendant Officers") knew or should have known about the Opioid Overdose Response—Naloxone Administration Training published by the State of Tennessee in 2018.[1]

20. The City and BTPD are also responsible for all matters relating to the selection, supervision, promotion, training, and discipline of employees, including uniformed and non-uniformed employees.

21. At all relevant times, Defendant Chief Austin was the appointed Chief of the BTPD, responsible for the screening, hiring, firing, training and supervision of BTPD officers.

22. At all relevant times, Defendant Chief Austin and Defendant Officers Condra, Barker and Ketron were employed by the BTPD and were acting under color of law.

23. Defendant Officers Condra, Barker and Ketron were supervised and trained by Chief Austin, the BTPD, and the City of Bristol.

24. Various unnamed persons not made Defendants in this matter, including officials and

---

[1] https://www.tn.gov/content/dam/tn/health/documents/opioid_response/General-Public-Naloxone-Training-Guide.pdf

7

employees of the City and the BTPD, have participated in violations asserted herein and performed acts or made statements in furtherance thereof. Plaintiffs reserve the right to name some or all of these persons as Defendants, as they become known.

**Prior Incidents and Notice**

25. BTPD has a history of failing to recognize a medical emergency. In August 2017, Austin Turner, who had a history of seizures, collapsed on the kitchen floor and did not appear to be breathing. His body was shaking, and he had white foam coming from his mouth. When EMS arrived they were accompanied by BTPD officers, who began shouting for Mr. Turner to stand up and threatened to use a taser if Mr. Turner did not stop shaking. BTPD tasered Mr. Turner despite EMS workers telling the officer to wait, placed a bag over his head, handcuffed him behind the back, shackled his legs, and strapped him faced down to the ambulance stretcher. The video shows that once inside the ambulance an officer sat on Mr. Turner who was still strapped face down on the stretcher.

26. Mr. Turner died at the hospital. His family was told that he had died of a drug overdose. However, an Associated Press ("AP") investigation into the death revealed that the only drug in Mr. Turner's system was Suboxone. More revealing was the bodycam video that the AP had obtained that showed Mr. Turner was having seizure-like muscle stiffness followed by jerking movements.

27. Bodycam video demonstrated that from the time the BTPD entered the home, Mr. Turner was treated like a suspect resisting arrest—not a patient having a medical emergency.[2]

28. On September 27, 2023, Darrell Meares, Captain and Assistant Emergency Medical

---

[2] https://apnews.com/article/police-force-investigation-austin-hunter-turner-e318b9b7c8e673f2a5f8e0c1174ccb93

Services ("EMS") Director and Program Coordinator/Educator for the Bristol Tennessee Fire Department sent an e-mail to members of the Bristol Police Department requesting that all officers be made aware of the protocols for Narcan administration.

29. This notice that BTPD officers were not properly trained on the Narcan administration was dated September 27, 2023, more than 30 days before Defendants Condra, Barker, and Ketron failed to timely administer Narcan to Brian.

30. The email from Darrell Meares described an incident where BTPD encountered a man who was behaving erratically, rolling around on the ground, and digging into the ground with his hands. The BTPD administered two doses of Narcan to the patient who was not showing symptoms of an overdose or respiratory issues. EMS transported the man to the hospital where physicians opined that the Narcan increased the effects of the Xylazine (zombie drug) that the man was known to have taken, and that the patient was not likely to survive. Despite noting that this apparent drug interaction was "very rare," the email requests that "if the patient is not in respiratory arrest (Not Breathing), do not give Narcan."

31. The United States is in the midst of an opioid overdose epidemic.[3] The Centers for Disease Control and Prevention ("CDC") reports overdose is now the leading cause of accidental death in the U.S., exceeding motor vehicle fatalities. Two out of three drug overdose deaths in 2018 involved an opioid.[4] Overdose deaths involving opioids, including prescription opioids,

---

[3] Opioids are a class of drugs that include the illegal drug heroin, synthetic opioids such as fentanyl, and pain relievers available legally by prescription, such as oxycodone (OxyContin®), hydrocodone (Vicodin®), codeine, morphine, and many others. See https://www.drugabuse.gov/drug-topics/opioids. An opioid overdose can occur when a person mixes opioids with alcohol, over-the-counter drugs, or other medications (especially sedative hypnotic agents, commonly called "depressants" like Xanax) that slow down or "depress" the activity of the brain (causing sedation, respiratory depression, and overdose).

[4] Wilson N, Kariisa M, Seth P, et al., Drug and Opioid-Involved Overdose Deaths – United States, 2017-2018. MMWR Morb Mortal Wkly Rep 2020; 69:290-297.

9

heroin, and synthetic opioids (like fentanyl), have increased almost six times since 1999.[5] Overdoses involving opioids killed nearly 47,000 people in 2018, and 32% of those deaths involved prescription opioids.[6]

32. In Tennessee, deaths attributed to prescription drug overdose have risen by 200% since 1999.[7] From 2014 to 2018, Tennessee drug overdose deaths increased nearly 44%. This epidemic continues to evolve.[8] Opioids have consistently been common contributing causes among drug overdose deaths in Tennessee.

33. 3,826 Tennesseans died from drug overdose in 2022. Of those deaths, 3,073 were from opioids. The increase in opioid overdose deaths is primarily driven by deaths involving illicit fentanyl. East TN had the highest number of overdose deaths, encompassing 43% of the deaths in 2022.[9]

34. In the four years from 2018 to 2022, Northeast Tennessee's overdose deaths nearly doubled, rising 85% from 141 to 264-or less than three people per week to more than five per week. Fentanyl was involved in 149 of those cases, up from 139 in 2021. Sullvan and Washington

---

[5] Wide-ranging online data for epidemiologic research (WONDER). Atlanta, GA: CDC, National Center for Health Statistics; 2020. Available at http://wonder.cdc.gov.

[6] Wilson N, Kariisa M, Seth P, et al., Drug and Opioid-Involved Overdose Deaths – United States, 2017-2018. MMWR Morb Mortal Wkly Rep 2020; 69:290-297.

[7] See https://www.morristownhamblen.com/wp-content/uploads/sites /9/2016/03/Hamblen-HNA-Final.pdf

[8] See Tennessee's Annual Overdose Report 2020: Report on Epidemiologic Data, Efforts, and Collaborations to Address the Overdose Epidemic (Office of Informatics & Analytics Tennessee Department of Health, https://www.tn.gov/content/dam/tn/health/documents/pdo/Overdose%20Report%202020.pdf.

[9] https://www.overmountainrecovery.org/opioid-epidemic/#:~:text=Tennessee%20ranks%20%232%20in%20the,deaths%2C%201%2C268%20were%20from%20opioids

10

counties had the highest numbers of fatal overdoses, with 77 and 68, respectively. The region's two largest counties were both up over the previous year.[10]

35. In Sullivan County, which recorded 77 fatal overdoses in 2022 after posting 74 the year before, the team recovery leader for the Sullivan County Anti-Drug Coalition said the trend of declining total overdoses but increasing fatal ones is playing out. Jeff Noah of the Sullivan County Anti-Drug Coalition said he just completed a report showing about a 25% decrease in total overdoses in 2023 compared to 2022. "The deaths increased by that much, or maybe even a third," Noah said.[11]

36. Like most Americans, BTPD Officers are familiar with drug addiction. But their law enforcement jobs also invariably compel them to confront overdoses and drug addiction practically every day, if not multiple times each day. Considering the devastating and enduring effects of the opioid epidemic on Sullivan County over the past twenty years and the relevant data discussed above, in addition to their lay knowledge, the BTPD should have trained its police officers, including the Defendant Officers, to be alert to and on the lookout for signs that a detainee might be experiencing a drug overdose and require immediate medical attention.

37. The facts involving Brian Bibee's tragic encounter with officers of the BTPD demonstrate the obvious lack of proper training in Sullivan County.

**Brian Bibee**

38. Brian Bibee ("Brian") was a 37-year-old young man who worked as a contractor in

---

[10] https://www.wjhl.com/news/local/northeast-tn-fatal-overdose-numbers-still-rising-but-not-as-fast-specialists-say/

[11] *Id*.

11

Bristol, Tennessee. He was devoted to his parents, Hal Haynes Bibee, Sr. and Sheron Bibee, and an avid fan of the Tennessee Volunteers, where he played varsity baseball. He had been a star athlete and baseball player from Little League through college.

39. On the afternoon of October 29, 2023, at approximately 12:30 p.m., the emergency dispatch office for the Bristol Police Department (BTPD) received a call from a concerned citizen who saw a man, later identified as Brian Bibee, erratically stumbling through the parking lot of a local grocery store in Bristol, Tennessee, talking to himself. Brian Bibee fell to the ground multiple times, walked into a pole, and stumbled into several parked motor vehicles. The caller remarked that he observed a male "under the influence of something" and that "he's either going to get himself killed or he's going to, um, he's going to do something to somebody." Further, the caller reported that "he's lethargic, he's walking crazy, talking to himself…." The caller identified himself as the "director for the juvenile court."

40. Alerted by a dispatch call warning that the subject was "extremely 1095 [sic]," Defendant officers responded to the scene. According to General Order 800.1 dated October 1, 1995, code 10-95 indicates "Officer Safety Concern." The immediately preceding code, 10-84, is for "Drugs."

41. Bristol Police Department Officers Barker, Condra and Ketron responded to the call and found Brian Bibee staggering and stumbling up a hill. Officers were able to apprehend Brian without breaking into even a trot.

42. Defendant Officer Shannon Barker was the first to approach Brian Bibee and described him as staggering and under the influence of drugs.

43. Brian complied with the officers as they took him to a grassy area and instructed him to sit.

44. Body camera video evidence clearly shows, as first reported to the dispatcher, that Brian Bibee exhibited signs of drug intoxication and struggled to remain alert as Defendant Officers questioned him about drug usage and where he had obtained drugs. Brian was disheveled and covered in fresh abrasions from his falls and encounters with a light pole, the pavement, and motor vehicles. He admitted to using drugs and being "high."

45. As Defendant Officers continued to attempt questioning Brian Bibee, Brian would become unresponsive, fall over, and mumble that he was tired and exhausted.

46. Rather than call for EMS, Defendant Officers attempted to handcuff Brian as he again appeared to fall over semi-conscious.

47. Body camera video shows that Brian Bibee repeatedly fell over, semi-conscious, numerous times while Defendant Officers attempted to question him and that Brian Bibee's speech was slurred and incoherent.

48. Instead of assisting him, Defendant Officers laughed and remarked that Brian could not even hold his head up and was drooling.

49. Defendant Officers accused Brian of stiffening up as they were handcuffing him and began verbally assaulting Brian, who was obviously trying to comply while struggling to remain awake. Defendant Officer Barker asked Brian "why are you so sweaty and nasty, I can't even grab my handcuffs because of your sweat." On the way back to his squad car to get hand sanitizer, Defendant Officer Barker turned and said to Defendant Officer Condra "what the fuck is wrong with him."

50. After Defendant Officer Barker returned from cleaning his hands, Defendant Officers

13

pulled Brian to his feet and took him to the front of Defendant Officer Condra's cruiser. The Defendant Officers proceeded to search Brian's pockets, at which time body-cam video shows Brian leaning on the cruiser with his face on the hood and he continued to lose consciousness.

51. Defendant Officers continued to verbally abuse Brian with their comments directed at Brian's inability to hold his head up, his inability to stay awake, and for drooling as they search Brian's pockets. Defendant Officer Barker poked Brian to arose him and Defendant Officer Condra said, "now I've got to get your slobber up because you can't even hold your head up." Defendant Officer Barker added "fucking slobber and spit all over my face."

52. The Defendant Officers found four (4) syringes in Brian's pocket, one of which was uncovered. The contents of these syringes, if any, are unknown, as the Defendant Officers failed to secure the evidence.

53. Based upon his admissions to being high, using drugs, and upon the finding of syringes in Brian's pockets, Defendant Officers had actual knowledge that Brian Bibee was suffering from a drug overdose.

54. Brian is observed in body cameras video appearing to lose consciousness again as Defendant Officers Ketron and Barker attempted to place him into the back of another cruiser.

55. From the moment Defendant Officers Condra, Barker, and Ketron encountered Brian Bibee, Brian was exhibiting obvious symptoms of a drug overdose, e.g., confusion, unsteady on his feet, extreme drowsiness, nodding off, unable to keep his head up, shallow breathing, pinpoint pupils, sweating profusely, then having convulsions and making gurgling sounds.[12] It does not take even a cursory review of medical literature for a layman to appreciate that if a person is displaying

---

[12] See https://americanaddictioncenters.org/overdose

such signs as these, he needs emergency medical care. The Defendant Officers were not laymen, but rather police professionals supposedly trained to recognize the need for emergency medical care.

56. For the better part of half an hour, Brian Bibee exhibited multiple, obvious, and serious signs that a lay person would recognize as signs of a drug overdose, or at least a medically emergent condition. The Defendant Officers, allegedly trained for medical emergencies, including drug overdoses, failed to recognize the plain symptoms of a drug overdose, failed to administer Narcan, and failed to contact EMS when it was apparent that Brian could not stay awake or hold up his head.

57. Brian is observed in body cameras video appearing to lose consciousness again as Defendant Officers Ketron and Barker wedged him into the back of the police cruiser.

58. Defendant Officer Barker remarked that Brian's "eyes are pinpoint" as they attempted to arouse him while placing him in the rear of the police cruiser. In gross violation of clearly known health and safety precautions, the officers placed Brian upright in the back of the cruiser, hands cuffed behind his back. A victim of opioid overdose should never be placed in this position, as it threatens aspiration of vomit. Brian aspirated his own vomit; it blocked his airways and rendered futile later efforts to revive and resuscitate him to save his life.

59. None of the Defendant Officers called EMS. Instead, Defendant Officers Barker and Ketron shut the door to the cruiser, left Brian inside and unattended, and walked away.

60. With Brian in the back of Defendant Officer Barker's cruiser, Defendant Officer Barker approached Defendant Officer Condra and inquired as to whether they should call Emergency Medical Services.

61. Defendant Officer Barker reported that when he and Defendant Ketron put Brian in

the back of the cruise Brian "went into this convulsive state, it looked weird, then when I jerked his ass up, he went (Defendant Officer Barker throws his head back and mimics the noise made involuntarily by Brian)."

62. Bodycam video and audio reflect that Defendant Officers Condra and Barker voiced concerns that the jail would not accept Brian because of the severity of his intoxication and yet, they did not call for EMS. The Defendant Officers decided not to involve EMS and began discussing what should be used as the grounds for arresting Brian.

63. Defendant Officer Ketron, who was tasked with observing Brian while he sat in the back of the cruiser, appeared to be watching Defendant Officers Barker and Condra instead.

64. Body cam video and audio reflect Defendant Officer Barker asking Defendant Officer Ketron if Brian was "still alive back there," prompting Defendant Officer Ketron to check on Brian.

65. Defendant Officer Ketron knocked on the widow and shouted at Brian before opening the door and alerting the other officers that assistance was needed.

66. Defendant Officer Ketron opened the back door and found Brian unresponsive and not breathing in the rear of the police cruiser. Defendant Officer Barker noted Brian was blue and began rubbing his chest, but Brian did not respond. The Defendant Officers then removed Brian from the backseat of the vehicle with great difficulty and placed him on the ground on his back. The body cameras reveal that one Defendant Officer even asked: "What do I do?"

67. Defendant Officer Barker administered Narcan to Brian and attempted CPR while Defendant Officer Condra notified EMS. Body cam video reveals that Brian remained handcuffed with his hands behind his back, lay on the ground, gasped a couple of times and then expired.

68. Defendant Officers Condra, Barker, and Ketron made no effort to obtain medical

16

assistance for Brian Bibee prior to pulling him out of the cruiser. They did not administer Narcan to him when it was obvious that Brian was likely suffering an overdose and was not breathing.

69. Defendant Officers failed to follow reasonable and clearly accepted procedures in responding to likely drug overdose, including, among others, the Opioid Overdose Response— Naloxone Administration Training published by the State of Tennessee in 2018.[13]

70. Fire and Rescue workers arrived at the scene and took over CPR while also administering Narcan to Brian. EMS workers arrived at the scene shortly after Fire and Rescue and took over the attempt to resuscitate Brian as they asked the Defendant Officers about Brian's condition. Defendant Officer Barker stated that he was running around like a zombie and falling asleep sitting. Defendant Officer Condra stated, "I don't think we did nothing wrong."

71. EMS was unable to intubate Brian, remarking that his airways were probably obstructed with vomit. EMS transported Brian to the emergency room of Bristol Regional Medical Center, where he was pronounced dead nine minutes after arrival.

72. Bodycam video shows the Defendant Officers huddle up and Defendant Officer Condra stated, 'there was no reason to treat him differently over there because that's the way they all act" (points to the area where Brian had been sitting prior to being stuffed into the police car and instructed to sit up). As soon as Defendant Officer Condra finishes this statement, Defendant Barker tapped on his bodycam while looking at Defendant Condra, who then immediately turned off his bodycam.

73. On November 27, 2023, Andrea Orvik, M.D., reported to Barry P. Staubus, Sullivan

---

[13] https://www.tn.gov/content/dam/tn/health/documents/opioid_response/General-Public-Naloxone-Training-Guide.pdf

17

County District Attorney, that she had completed the autopsy of Brian Bibee, and it was her opinion, after reviewing the body cam footage, that if Narcan had been administered sooner that Brian may have survived. *See* Exhibit 2.

74. According to the Forensic Examination Report dated December 4, 2023, and signed by Andrea Orvik, M.D., Brian Bibee died as a result of acetyl fentanyl, fentanyl and methamphetamine intoxication.

75. In a written statement, Defendant Officer Condra later acknowledged that it was obvious that Brian Bibee was heavily intoxicated. He described Brian as being "coherent at times but was not making sense in his statements." Defendant Officer Condra described Mr. Bibee as zoning out or dozing off as Defendant Officers attempted to question him.

76. Defendant Officer Condra admitted in his statement that Defendant Officer Barker asked if they should have an ambulance dispatched to their location and that he, Defendant Officer Condra, said he did not see any reason for an ambulance. Defendant Officer Condra failed to include that Defendant Officer Barker was inquiring about an ambulance because Brian Bibee had become convulsive and had made gurgling sounds while being placed in the back of the cruiser.

77. Defendant Officer Barker also submitted a written statement regarding the detention and death of Brian Bibee. He stated that he believed that Mr. Bibee was a danger to himself or others due to his level of intoxication. Defendant Officer Barker failed to include that Brian Bibee became convulsive, made involuntary gurgling noises, and had pinpoint pupils.

78. Defendant Officer Ketron submitted a written report regarding the detention and death of Brian Bibee. He described Brian Bibee as stumbling around, falling asleep, and swaying.

79. On January 31, 2024, Barry P. Staubus, Sullivan County District Attorney, reported to

18

members of the BTPD the telephone conversation he had with Dr. Orvick. Mr. Staubus noted that Dr. Orvik provided the information regarding Brian Bibee for "training purposes" and that her findings would not be in the autopsy report. Bristol City Chief of Police Austin responded by sending materials including email correspondence warning of using too much Narcan and of the adverse effects if given under the wrong circumstances or if too much was administered. *See* Exhibit 2.

80. All of the Defendant Officers had a duty under the Fourteenth Amendment to take reasonable measures to guarantee Brian Bibee's safety while he was in their custody. They violated this duty by ignoring substantial risks of serious harm to Brian, having created such risks via defacto policies, customs, and/or practices of deliberate indifference.

81. Each Defendant Officer was well-situated to know and did know the risks of ignoring an obvious and serious medical condition such as the one manifested by Brian Bibee. Although Brian exhibited obvious and serious signs of a drug overdose, the Defendant Officers did nothing to help him . . . at least not until it was too late. That deliberate indifference to Brian's health and safety proximately resulted in his death at the age of 37.

82. Notwithstanding the opioid epidemic's catastrophic effects on Sullivan County and the disproportionate number of drug arrests and inmates in jail on drug crimes, the City of Bristol, as well as its respective top law enforcers, failed to train officers to recognize even obvious signs of a drug overdose and then to respond appropriately for the protection of the public.

83. There is not, upon information and belief, a scintilla of evidence that BTPD officers were sufficiently trained on when and how to administer Narcan, much less detect even obvious signs that a detainee is experiencing a potentially fatal drug overdose. It is known in the medical community that immediate delivery of Narcan under circumstances like those presented here can

reverse an opioid overdose in as few as two minutes, and that naloxone administration does no harm when not needed.

84. Here, Brian Bibee, in the midst of such an overdose, was berated by Defendant Officers Condra, Barker, and Ketron for the symptoms that should have prompted the Defendant Officers to administer Narcan or at minimum immediately call for an EMS responder. In the end, the three first responders berated Brian rather than administer Narcan, then literally stood around rationalizing charges while Brian died.

85. Sadly, each of the individual Defendant Officers had a clear opportunity to save Brian Bibee's life in the last half hour before he died. But each with deliberate indifference to the demonstrable, clearly known and substantial risks to Brian's safety, took no action whatsoever to help him. Moreover, the actions they did take only added to his peril.

86. The conclusion that Brian Bibee would still be alive was acknowledged by the physician who performed Brian's autopsy after she watched the body camera videos.

87. The actions and inactions of each of the Defendant Officers contributed to and caused Brian Bibee to consciously undergo the effects of a drug overdose, endure pain, suffering and ultimately, death.

88. As a direct and proximate result of the unreasonable actions of the Defendant Officers, Brian Bibee suffered bodily injuries, severe emotional distress and mental anguish, embarrassment, humiliation, physical pain and suffering, and death.

89. Defendant Officers, acting under color of law and with deliberate indifference to his clearly established right to immediate medical care, deprived Brian Bibee of his constitutional rights under the Fourteenth Amendment and caused his wrongful death.

90. As a direct and proximate result of the unreasonable actions and inactions of each of

the Defendant Officers, Plaintiffs have incurred substantial damages, including, but not limited to, emergency services bills, medical bills, and funeral expenses.

91. By this action, Plaintiffs Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin to Brian Bibee, make the following claims:

- Count One – 42 U.S.C. § 1983, under the Fourth and Fourteenth Amendments – Failure to Protect (against Officers Condra, Barker, and Ketron);

- Count Two – 42 U.S.C. § 1983, under the Fourth and Fourteenth Amendments – Failure to Provide Adequate Medical Care (against Officers Condra, Barker, and Ketron);

- Count Three –Failure to Train and Supervise Officers to Recognize Signs or Symptoms of a Drug Overdose (against the City and Chief Austin);

- Count Four – Wrongful Death (against all Defendants);

- Count Five – Negligence and Gross Negligence (against all Defendants);

- Count Six – Intentional Infliction of Emotional Distress (against Officers Condra, Barker, and Ketron);

- Count Seven – *Monell* claim (against City of Bristol).

92. Plaintiffs seek all compensatory damages available to them from all Defendants; punitive damages against the individual Defendant Officers Condra, Barker, and Ketron; attorneys' fees, costs, expenses; and all other available and appropriate relief.

### IV. WAIVER OF IMMUNITY

93. The allegations of the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

94. The City has waived immunity for the negligence of City or County employees, misconduct of officers or deputies acting under color of law, and for the negligence of officers, deputies, or employees of the BTPD or Defendant City, as set out in *Tenn. Code Ann*. §29-20-305

21

and by *Tenn. Code Ann.* §8-8-302 for intentional acts, omissions, or other misconduct done by deputies under color of law.

95. There is no immunity for individuals for criminal conduct or conduct which is willful or malicious.

96. Defendant City is a political subdivision of the State of Tennessee, the duly formed municipal government for, and the political entity that governs Bristol, Tennessee, and operates a police department out of which this case arises. As such, Defendant City had a legal duty of care to provide for the health, protection, and safety of all persons detained and/or arrested by police officers employed by the Bristol Tennessee Police Department, including Brian Bibee.

97. Defendant City had a duty to exercise ordinary and reasonable care for the protection of the persons detained and/or arrested by BTPD police officers, including Brian Bibee.

98. Defendant City's legal duties are enhanced since detainees and/or arrestees are especially vulnerable as many of those confined suffer from chronic mental health issues, drug abuse, addiction, and often a combination of these disease conditions.

99. Defendant City was aware that its police officers were either not trained to respond to detainees suffering from a drug overdose or were negligent in responding to detainees suffering from a drug overdose.

100. Immunity from suit under the Governmental Tort Liability Act ("GTLA") is statutorily removed for injuries proximately caused by any negligent acts or omissions of governmental employees acting or failing to act within the scope of their employment.

101. A governmental entity immune for suit for actions involving "planning or policymaking." When the act is merely "operational," the entity is not immune.

102. Planning decisions usually involves consideration and debate regarding a particular

22

course of action by those charged with formulating plans or policies. A planning decision frequently requires a governmental entity to create policies or plans, formulate specifications or schedules, allocate resources, or determine priorities.

103. Here however, Defendant's policy and planning decisions were neither invoked nor involved and are not at issue herein and are not challenged in this action.

104. Operational decisions, however, implement "preexisting laws, regulations, policies, or standards" that are designed to guide the actions of the governmental entity. An operational decision requires that the decision-maker act reasonably when implementing preexisting policy. Unlike a planning or policymaking decision, an operational decision does not involve the formulation of new policy.

105. Administering Narcan and or requesting EMS services for a detainee suffering from a drug overdose is not a discretionary function, the policy decisions to train officers to use Narcan, carry Narcan, and administer aid to persons suffering from a drug overdose is an established policy decision that was made long before Brian Bibee died of a drug overdose while in the care and custody of PTPD. However, the failure to follow that policy is operational and in this case is an operational failure of the Defendant.

106. Plaintiffs make no claim and asserts no cause of action for any decision of Defendant's employees in assessing priorities, allocating resources, developing policies, or establishing plans, specifications, or schedules. *Bowers v. City of Chattanooga,* 826 S.W.2d 427, 431 (Tenn. 1992). Plaintiffs make no claim and asserts no cause of action for any decision of Defendant's employees about a particular course of conduct determined by Defendant after consideration or debate by an individual or group charged with the formulation of plans or policies. *Id*.

107. Rather Plaintiffs do claim that failing to administer Narcan or promptly call for EMS when it was clear that Brian Bibee was suffering from a drug overdose and failing to retrain officers when it was known that police officers where not correctly using Narcan, as Defendants failed to do, were ad hoc decisions (or non-decisions) made by individuals not charged with the development of plans or policies for police officers. Accordingly, pursuant to Tennessee law, specifically the *Bowers* opinion of the Tennessee Supreme Court cited in the preceding paragraph. Defendant's employees failure to administer Narcan or timely request EMS was merely operational and not "planning" and therefore not entitled to immunity as a planning decision. "To hold otherwise would be to convert every operational decision requiring choice into a discretionary function." *Id.*

## V. CLAIMS FOR RELIEF

## COUNT ONE

## VIOLATION OF 42 U.S.C. § 1983
### DELIBERATE INDIFFERENCE - FAILURE TO PROTECT
(Officers Condra, Barker, and Ketron)

108. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

109. Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws.

110. Police officers have a duty under clearly established laws, including the United States Constitution, the Fourth and Fourteenth Amendments, 42 U.S.C. §1983, and applicable federal laws to protect detainees in their custody and control from a substantial risk of harm.

111. At all times relevant hereto, the individual Defendant Officers Condra, Barker and

24

Ketron were acting under color of state law.

112. At all times relevant hereto, the Defendant Officers knew or should have known about the clearly established laws that render deliberate indifference to the safety of detainees from a substantial risk of harm as unconstitutional.

113. Defendant Officers knew or should have known of the clearly established laws protecting the constitutional rights of Brian Bibee, including the right to safety, protection, and medical care while in the custody and care of police officers, and to be free from any violations of his liberty interests and personal security protected by the Fourteenth Amendment

114. From the moment Brian Bibee was taken into custody by Defendant Officers Condra, Barker, and Ketron, the Defendant Officers owed Brian a duty to protect him from harm. The Defendant Officers breached that duty by willfully disregarding the fact that Brian Bibee was in full-blown medical distress.

115. At the time of the incident, the law was clearly established that deliberate indifference to the safety of detainees from a substantial risk of harm is unconstitutional. Defendant Officers Condra, Barker, and Ketron deprived Brian of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution when they acted with deliberate indifference and reckless disregard toward his safety.

116. Defendant Officers Condra, Barker, and Ketron intentionally, recklessly, and with deliberate indifference failed to take any measures to protect Brian Bibee from dying of an accidental overdose, notwithstanding their knowledge that he was actively exhibiting acute symptoms of overdose as demonstrated by their immediately observing his intoxicated state in the middle of the day on a Sunday, the fact that he told them he had taken "sabotage," and was "so high," the tell-tale symptoms of overdose he exhibited and a body search revealing several

25

syringes, including one uncapped. None of the Defendant Officers indicated in any way that they suspected alcohol intoxication, nor did Brian provide any indication of any form of intoxication other than from opioids, other factors that should have led to the immediate delivery of naloxone.

117. Defendant Officers Condra, Barker and Ketron had multiple opportunities to call for medical care for Brian Bibee that could have aided him and saved his life, but they refused to provide such care or call for EMS services despite their knowledge of his drug use and deteriorating condition.

118. Brian's condition and behavior cried out for help from the moment Defendant Officer Barker approached him on the street until Brian died about an hour later. Brian's serious need for medical care manifested itself to the BTPD Officers immediately, by virtue of the sheer number and severity of serious symptoms he exhibited.

119. Defendant Officers Condra, Barker, and Ketron berated Brian for the very symptoms that should have alerted them to call EMS. The Defendant Officers made no effort to evaluate Brian's condition, not even so much as checking his blood pressure, pulse, respiration rate, or heart rate. Checking any of those vital signs could have saved Brian's life, or at least given him a chance to live, by signaling to Defendant Officers that Brian needed proper medical care.

120. Brian's drug overdose manifested itself in a way that should have been obvious to even a lay person that he needed assistance and protection. Certainly, Defendant Officers knew that a substantial risk of serious harm existed from a drug overdose. But they ignored all of the many signs that Brian was in serious medical distress.

121. Defendant Officers Condra, Barker and Ketron engaged in a concerted effort to deprive Brian Bibee of the safety and protection to which he was entitled while under their custody and control, resulting in his suffering and ultimate death.

26

122. Defendant Officers Condra, Barker and Ketron violated the Fourth and Fourteenth Amendment rights of Brian Bibee, and directly and proximately caused his death.

123. The Defendant Officers were acting in their capacity as law enforcement officers, under color of state law and within the scope of their employment when they committed these acts of deliberate indifference to the safety of Brian Bibee.

124. Accordingly, under 42 U.S.C. §1983 and similar doctrines adopted by the State of Tennessee, said Defendant Officers are liable for the damages resulting from the pain, suffering, and death of Brian Bibee.

125. The actions and inactions of Defendant Officers Condra, Barker and Ketron were objectively unreasonable, unwarranted, were not taken in good faith, and were in violation of the clearly established constitutional rights of Brian Bibee, including the Fourth and Fourteenth Amendments to the United States Constitution and other clearly established laws.

126. As a direct and proximate result of the actions and inactions of Defendant Officers Condra, Barker and Ketron in failing to protect Brian Bibee while he was in their custody and demonstrating deliberate indifference to his safety, Plaintiffs Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin to Brian Bibee, have incurred substantial damages, including, but not limited to, emergency services bills, medical bills, and funeral expenses.

127. Plaintiffs sue these individual Defendant Officers for violating the constitutional rights of their decedent and son, Brian Bibee, and seek any and all damages allowable to the Estate of Brian Sullivan Bibee and to Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as Brian's parents and next of kin, including attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

27

128. Because the actions and inactions of Defendant Officers Condra, Barker and Ketron involved "a reckless or callous indifference to the federally protected rights" of Brian Bibee, an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:l 5-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

**COUNT TWO**

**VIOLATION OF 42 U.S.C. § 1983**
**DELIBERATE INDIFFERENCE - FAILURE TO PROVIDE MEDICAL CARE**
**(Officers Condra, Barker, and Ketron)**

129. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

130. Under 42 U.S.C. § 1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws.

131. Police officers have a duty under clearly established laws, including the United States Constitution, the Fourth Amendment, 42 U.S.C. §1983, and applicable federal laws, to provide medical care to detainees in their custody and control.

132. At all times relevant hereto, Officers Condra, Barker, and Ketron were acting under color of state law.

133. From the moment Brian Bibee was taken into custody by Defendant Officers Condra, Barker, and Ketron, they owed him a duty to provide him with appropriate and adequate medical care. The Defendant Officers breached that duty of care by failing to provide for or allow actual medical care that could have aided Brian Bibee and even saved his life.

134. The Defendant Officers engaged in a pattern of conduct that was unreasonable and

28

deliberately deprived Brian Bibee from obtaining the medical care he desperately needed that could have eased his suffering and saved his life.

135. Defendant Officers, particularly Defendant Officers Barker and Ketron, had notice of Brian's medical needs from the moment they first encountered him. Defendant Officers witnessed Brian Bibee experiencing an obvious and serious medical crisis. His symptoms were so obvious that a lay person would have recognized them, much less to someone whose job regularly exposed him to citizens experiencing drug overdoses. Yet, instead of obtaining medical help for Brian, these Defendant Officers ignored tell-tale signs that Brian's physical condition was devolving, exhibited no concern at all towards Brian's health or safety, and were concerned only with justifying the arrest.

136. Brian Bibee exhibited a serious medical need to which a properly trained police officer could have reasonably responded with an assessment of his vital signs (respirations, blood pressure, pulse), the administration of naloxone, and by immediately calling for EMS assistance, all of which should have been within their scope of training.

137. If the BTPD Defendant Officers had called EMS, the EMS professionals would have recognized the obvious signs of a drug overdose and provided whatever medical care was required. Once called, in fact, EMS responders were on the scene within a matter of a very few minutes. Instead of making what would have been a life-saving call, Defendant Officers forcefully loaded and locked Brian in the back of a police cruiser, upright and restrained with his hands cuffed behind his back, both of which placed him at immediate risk of inhaling vomit and are contrary to accepted practice. Once stuffed into the back of the department cruiser, Defendant Officer Ketron ignored Brian's worsening condition, was deliberately indifferent to his fate and left him to die alone of a drug overdose that clearly could have been treated.

138.     Defendant Officers Condra, Barker and Ketron had multiple opportunities to provide or obtain actual medical care for Brian Bibee that could have aided him and saved his life, but they refused to call for medical help, refused to provide adequate or timely medical assistance, and allowed Brian to suffer and die despite their knowledge of his drug use, apparent overdose, and deteriorating condition.

139.     Defendant Officers had multiple opportunities to seek or provide medical care for Brian Bibee that would have saved his life. Instead, they engaged in a concerted effort to deprive Brian of appropriate medical care and were indifferent to his need for the same, resulting in his suffering and ultimate death.

140.     Defendant Officers were deliberately indifferent to Brian Bibee and ignored his obvious symptoms of drug overdose, despite knowing that he admitted to using drugs and was "high", their finding needles and syringes on his person, and the Defendant Officers observing Brian's incoherent speech and actions and other indications of a condition that ultimately claimed his life.

141.     Defendant Officers ignored Brian's continued deterioration in the back of the police cruiser and were deliberately indifferent to his need for medical care.

142.     The actions and inactions of the Defendant Officers contributed to and caused Brian Bibee to endure pain and suffering and, ultimately, death.

143.     The failure of the Defendant Officers to obtain medical care for Brian Bibee for his obvious and serious medical needs constituted a violation of his rights to such care under the Fourth and Fourteenth Amendments of the Constitution of the United States.

144.     The Defendant Officers were acting in their capacity as law enforcement officers,

30

under color of state law and within the scope of their employment when they committed these acts of deliberate indifference to the medical needs of Brian Bibee.

145. Accordingly, under 42 U.S.C. §1983 and similar doctrines adopted by the State of Tennessee, said Defendants are liable for the damages resulting from the pain, suffering, and death of Brian Bibee.

146. The actions and inactions of Defendants Condra, Barker and Ketron were objectively unreasonable, unwarranted, were not taken in good faith, and were in violation of the clearly established constitutional rights of Brian Bibee, including the Fourth and Fourteenth Amendments to the United States Constitution and other clearly established laws.

147. As a direct and proximate result of the actions and inactions of Defendant Officers Condra, Barker and Ketron in failing to provide medical assistance and care to Brian Bibee while he was in their custody and demonstrating deliberate indifference to his need for medical care, Plaintiffs Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin to Brian Bibee, have incurred substantial damages, including, but not limited to, emergency services bills, medical bills, and funeral expenses.

148. Plaintiffs sue these individual Defendant Officers for violating the constitutional rights of their decedent and son, Brian Bibee, and seek any and all damages allowable to the Estate of Brian Sullivan Bibee and to Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as Brian's parents and next of kin, including attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

149. Because the actions and inactions of Defendant Officers Condra, Barker and Ketron

31

involved "a reckless or callous indifference to the federally protected rights" of Brian Bibee, an award of punitive damages is appropriate to the fullest extent permitted by law. *See Morning v. Dillon Cty.*, No.: 4:l 5-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072, at *12 (D. S.C. Jun. 12, 2018) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)).

## COUNT THREE

### FAILURE TO TRAIN OR SUPERVISE OFFICERS
**(City of Bristol and Chief Austin)**

150. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

151. At all relevant times, Chief Austin was acting under color of state law.

152. Defendants City of Bristol and Chief Austin each had a legal duty to properly supervise their employees to recognize symptoms of drug overdoses in police detainees; provide assistance, safety, and protection; and provide appropriate medical assistance.

153. Upon information and belief, the City of Bristol has developed and maintained policies or customs that are inadequate for the tasks that police officers must perform, and such inadequacy is the result of the City's exhibiting deliberate indifference to the constitutional rights of persons in and around the City of Bristol, all of which caused the violation of the constitutional rights of Brian Bibee, his injuries, and death. Specifically, Defendant City of Bristol's policies and customs violated the provisions of the Fourth and Fourteenth Amendment rights of Brian Bibee.

154. Upon information and belief, the City of Bristol maintained a policy and custom of inadequately and improperly hiring, training, and/or supervising its police officers, including the Defendant Officers Condra, Barker, and Ketron named herein. The Defendant City of Bristol improperly tolerated and implicitly approved of prior acts of misconduct by its officers, including failing to protect detainees and providing appropriate medical care.

32

155. Upon information and belief, the City of Bristol maintained a policy and custom of failing to require appropriate in-service training or re-training of officers who were known to have deprived detainees of safety, protection, and adequate medical care; and failed to properly investigate complaints against said officers or discipline them accordingly.

156. The Defendant City of Bristol and Chief Austin failed to adequately discourage further constitutional violations on the part of its police officers, resulting in a high likelihood of additional re-occurrences of the same improper misconduct.

157. Recent internal communications among members of the BTPD reflect that police officers of the BTPD, including Chief Austin and Defendant Officers Condra, Barker, and Ketron, knew or should have known about the treatment of symptoms of drug overdoses, including the use of Narcan.

158. The City of Bristol, the BTPD, and Chief Austin failed to properly train the police officers of the BTPD, including the Defendant Officers, on how to treat persons suspected of suffering from a drug overdose, including obtaining appropriate medical care, the use of Narcan, and providing immediate medical care, first aid and assistance.

159. Defendant Officers Condra, Barker, and Ketron and Defendant Chief Austin are agents and employees of Defendant City of Bristol. At all times referenced herein, the Defendant Officers and Defendant Chief Austin were acting within the scope of their agency and employment with Defendant City of Bristol. Accordingly, Defendant City of Bristol is strictly and vicariously liable for the acts of Defendants Condra, Barker and Ketron and Defendant Chief Austin.

160. Defendant City of Bristol is liable for the reckless acts of the Defendant Officers and Defendant Chief Austin as set forth in this Complaint, all of which occurred within the scope of their employment.

33

161.    Defendant City of Bristol and Defendant Chief Austin were reckless in several aspects, including but not limited to, the following:

    a.    failing to properly train the Defendant Officers in proper police procedures and response procedures, including but not limited to, responding to persons who displayed symptoms of drug overdoses; recognizing such symptoms; providing immediate first aid and medical care; and calling for additional medical assistance;

    b.    failing to properly train the Defendant Officers in recognizing their duty of care to all detainees, including those suffering from drug overdoses, which would ensure the proper safety, protection, and medical care to which the detainees were entitled;

    c.    failing to properly monitor and supervise its police officers who encountered and dealt with persons suffering from drug overdoses;

    d.    negligently retaining police officers who failed to provide safety, protection, and medical assistance to detainees in their custody and control who suffered drug overdoses; and

    e.    implementing customs, policies, and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the failure of BTPD officers to protect detainees and provide adequate medical care to those suffering from drug overdoses.

162.    Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove police officers employed by BTPD who previously demonstrated a lack of training, a failure to provide safety and protection

34

to detainees, and a failure to obtain adequate medical assistance was likely to enable and encourage Defendant Officers to breach their duty of care to detainees such as Brian Bibee, and would one day result in the unnecessary and unconstitutional death of a citizen in violation of clearly established laws and constitutional provisions.

163. Any reasonable and reasonably well-trained law enforcement supervisor would recognize that failing to take action to correct, discipline, or remove police officers of the BTPD based on their proven and alleged dangerous misconduct, including the failure to recognize a drug overdose and the failure to offer safety, protection and medical care to the detainee suffering a drug overdose, was a violation of clearly established laws and constitutional provisions.

164. As a result of the above-described policies and customs, police officers of the City of Bristol, including the Defendant Officers, believed that their actions would not be properly monitored by supervisory officers, and that their unconstitutional misconduct would not be investigated, but rather it would be sanctioned, tolerated, and not subject to disciplinary actions.

165. Defendants City of Bristol and Chief Austin knowingly and recklessly failed to train, supervise, control, and discipline on a continuing basis the Defendant Officers in their duties to ensure the safety and protection of detainees suffering from drug overdoses, including Brian Bibee, and failing to provide immediate and adequate medical care, thereby resulting in a deprivation of their constitutional and statutory rights, privileges, and immunities secured by the United States Constitution, the Constitution of the State of Tennessee, and all applicable federal and state laws, statutes, rules, regulations, and procedures.

166. Defendants City of Bristol and Chief Austin directly or indirectly, under the color of law, approved or ratified the unconstitutional conduct of the Defendant Officers Condra, Barker, and Ketron.

167. Brian Bibee suffered severe and agonizing drug overdose symptoms prior to dying and died in the custody and care of the Defendant Officers all as a proximate result of the recklessness of the City of Bristol and Chief Austin, their failure to properly train and supervise the police officers of the BTPD, and the violation of his constitutional rights.

168. As a direct and proximate result of the actions and inactions of Defendants City of Bristol and Chief Austin, Plaintiffs Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin to Brian Bibee, have incurred substantial damages, including, but not limited to, emergency services bills, medical bills, and funeral expenses.

## COUNT FOUR

### WRONGFUL DEATH
### TENN. CODE ANN. §§ 20-5-106, et seq.
### (Against All Defendants)

169. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

170. Brian Bibee died, intestate, on October 29, 2023, survived by his parents, Hal Haynes Bibee, Sr., and Sheron Bibee. Brian did not have a surviving spouse and had no children.

171. On October 10, 2024, the Chancer Court for Sullivan County at Blountville, Tennessee appointed Hal Haynes Bibee, Sr. as Administrator of the Estate of Brian Sullivan Bibee. *See,* Exhibit No. 1.

172. Plaintiffs bring this action as the Administrator of the Estate of Brian Sullivan Bibee and individually as Brian Bibee's parents and next of kin, as authorized by *Tenn. Code Ann*. §§ 20-5-106, *et seq*., Tennessee's Wrongful Death Statute, and seek damages for medical and funeral expenses, loss of consortium and society.

36

173.  Defendants City of Bristol, Chief Austin and the Defendant Officers owed a duty of due care to Brian Bibee at all times relevant to this action and violated that duty in the manner alleged herein.

174.  Having been directly involved in stopping Brian as he staggered down the street, including questioning Brian, searching Brian, and observing Brian's demeanor and listening to his responses, Defendant Officers Condra, Barker, and Ketron had overwhelming information leading to obvious conclusion that Brian was having a serious medical crisis and needed immediate medical care. Yet, none of the officers responded in any way other than with disdain and indifference.

175.  The Defendant Officers also discovered an uncapped syringe among several syringes they found in Brian's pocket. Three minutes into his detainment, Defendant Officer Condra says to Brian, "man you are so high," and Brian responds, "I promise you I am high." All of this was more than enough to indicate Brian was at-risk for a drug overdose.

176.  If the admission of drug use and discovery of used syringes were not enough to stir Defendant Officers Condra, Barker, and Ketron's concern for Brian's well-being, the symptoms he exhibited surely should have, e.g., video and audio recordings shows that Brian was confused; that he was extremely drowsy, unable or barely able to hold his head up and stay awake, his speech severely slurred and his responses often incoherent, he was clammy and having difficulty breathing, Defendant Officer Barker noticed that Brian had pin-point pupils, experienced convulsions, and was gurgling when being placed in the rear of the police cruiser. There could be no doubt that Brian needed immediate medical attention, including immediate delivery of naloxone.

177.  Yet, the focus of the Defendant Officers was narrow and single-minded: do what

37

was necessary to make an arrest and get Brian Bibee accepted, in his current condition, at the jail.

178.   Throughout the stop, Defendant Officers Condra and Ketron appeared never to make a genuine inquiry about Brian's well-being and quickly dismissed Defendant Officer Barker's inquiry about calling for an EMS based on Brian having convulsions and making gurgling sounds. If the Defendant Officers had called for EMS (or even just administered naloxone) after immediately observing Brian's obviously intoxicated symptoms, including the fact that he was unable to remain awake or hold his head up, it is likely that Brian Bibee would have lived.

179.   If Defendant Officers had administered Narcan before Brian fell into respiratory arrest, such as when he had convulsions and made gurgling sounds, it is likely that Brian would have lived.

180.   By acting and failing to act as described above, Defendant Officers breached their duties to protect Brian Bibee, and/or acted in reckless disregard of the substantial risk that harm would result.

181.   These actions of Defendant Officers were performed knowingly, wantonly, and with gross disregard for Brian Bibee's safety and welfare.

182.   Defendants City of Bristol and Chief Austin breached their duties to properly ensure that police officers of the BTPD, including Defendant Officers, exercised their duty of care to Brian Bibee while he was in the custody of said officers.

183.   The foregoing acts of the Defendants proximately caused Brian Bibee's death, entitling Plaintiffs to recover compensatory damages from Defendants in an amount within the jurisdictional limits of this Court. Said damages include, but are not limited to, the pain and suffering Brian endured before his death, his lost earning capacity, medical bills, funeral, and/or related burial expenses, and his parents' loss of Brian's society and companionship.

38

184. Based upon the foregoing allegations of this Complaint, Plaintiffs are entitled to recover punitive damages from Defendant City of Bristol, the individual Defendant Officers and Defendant Chief Austin.

## COUNT FIVE

### NEGLIGENCE AND/OR GROSS NEGLIGENCE
### (Against All Defendants)

185. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

186. Defendants City of Bristol, Chief Austin, and Defendant Officers Condra, Barker, and Ketron owed a duty to Brian Bibee to act with ordinary care and prudence so as not to cause him harm or injury.

187. The actions of Defendants were negligent and reckless, including but not limited to, ignoring Brian's obvious and serious symptoms that he needed immediate medical care, failing to obtain such care for him, and failing to check on him, all of which culminated in his unnecessary death.

188. Defendants owed a duty to the public in general and specifically to Brian to use due care in fulfilling their duties and to ensure their conduct conformed to applicable laws, policies, procedures, and generally accepted law enforcement standards. As described above, Defendants breached their duties of due care and were negligent, grossly negligent, reckless, willful, and wanton in all of the foregoing particulars.

189. As a direct and proximate result of Defendants' gross negligence, as alleged above, and other undiscovered negligent conduct, Brian Bibee died in the back of a BTPD police cruiser as Defendant Officers stood outside the vehicle.

190. The foregoing acts or omissions proximately caused Brian Bibee's death, entitling

39

Plaintiffs to recover compensatory damages from Defendants in an amount within the jurisdictional limits of this Court. Said damages include, but are not limited to, the pain and suffering Brian suffered before his death, his lost wages and earning capacity, medical expenses, funeral, and/or related burial expenses, and his parents' loss of Brian's society and companionship.

**COUNT SIX**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Officers Condra, Barker, and Ketron)**

191. The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

192. The actions alleged herein against Defendant Officers Condra, Barker, and Ketron were outrageous and utterly intolerable in a civilized society and were done with a reckless disregard of the probability of causing emotional distress.

193. From the moment Defendant Officers encountered Brian Bibee, they knew, or should have known, that Brian was in medical distress. In fact, Brian was in the midst of a drug overdose that would eventually be fatal – unless those who could help Brian got him the medical care he needed.

194. Defendant Officers had all of the information needed right in front of them, and that information kept getting worse and more imperative. They knew from the minute they began to question Brian that the young man should not have been wandering the streets. Then, Brian told them that he had been doing drugs. Brian also had used syringes in his pocket.

195. The Defendant Officers ignored obvious signs of drug overdose exhibited by Brian Bibee. Brian was confused; he kept falling asleep; he was unable to even hold his head up; and Defendant Officer Barker specifically noted Brian's "pin-point pupils" and clammy body. Defendant Officers Barker and Ketron observed Brian slobbering, watched him suffer convulsions,

40

and heard him making gurgling sounds. Each of the Defendant Officers observed that Brian was unsteady and struggled to remain in a seated position.

196.   Although Brian was exhibiting tell-tale signs of a drug overdose and the Defendant Officers had substantial information indicating that Brian was in the midst of a serious medical crisis, the Defendant Officers made no effort to provide or obtain any medical care for Brian. Instead, they berated him, taunted him, forcefully handcuffed him, physically stuffed him in the back of the police cruiser, upright and exposing him to the known and unacceptable risk of inhaling vomit, and left him unattended where he suffered and died alone and in agony.

197.   All of this conduct was perpetrated with reckless disregard of the probability of inflicting suffering and mental anguish on Brian Bibee. Brian suffered immeasurably in his final hours, unable to breathe or cry for help and dying all alone in the rear of a police cruiser while three officers talked outside the vehicle.

198.   The aforementioned acts were done knowingly and intentionally in reckless, wanton, and callous disregard of Brian's safety, security, and civil rights. By reason thereof, Plaintiffs claim compensatory damages in an amount within the jurisdictional limits of this Court, as well as punitive damages in an amount sufficient to punish and deter the Defendant Officers, and others from engaging in similar conduct in the future.

## COUNT SEVEN

### *Monell* Liability – 42 U.S.C. §1983
### (City of Bristol)

199.   The allegations in the preceding paragraphs of this Complaint are hereby incorporated by reference, as if set forth verbatim.

200.   The allegations pertaining to the City of Bristol specifically set forth herein state a

claim for relief against the City of Bristol under the laws of the State of Tennessee and under 42 U.S.C. §1983 because the conduct of the Defendant Officers and Defendant Chief Austin not only occurred while acting under color of law and under the aegis of the City of Bristol, but also, upon information and belief, resulted directly from the express written or unwritten customs and policies of the City of Bristol.

201.    Municipal liability can attach under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988).

202.    Prior to October 29, 2023, Defendant City of Bristol developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Bristol, Tennessee, which caused the violation of the constitutional rights of Brian Bibee.

203.    Defendant City of Bristol had a pattern and practice of customs and policies that were inadequate and reckless in several aspects, including the failure to properly train its police officers in recognizing drug overdose symptoms in persons detained by them; the failure to properly train its police officers in providing safety, protection, and medical assistance to detainees suffering from drug overdoses; failing to properly monitor and supervise police officers who previously failed to provide such safety, protection and medical assistance to detainees suffering from drug overdoses; failing to follow suggested, adopted and/or implemented policies and procedures for the City of Bristol and the BTPD regarding treatment of detainees suffering from

42

drug overdoses; and implementing customs, policies and procedures, whether written or unwritten, condoning, encouraging, and demonstrating indifference to the safety, protection, and medical needs of detainees.

204. The City's systematic failure to train its officers adequately to recognize an acute medical crisis such as an opioid or other drug overdose is tantamount to a defacto policy, custom, or practice for which the City is liable. By failing to train its officers to detect common, obvious, and emergent medical situations of detained citizens, the City adopted a policy of deliberate indifference toward a particularly at-risk segment of its inhabitants.

205. The City of Bristol had a policy and/or custom of inadequately and improperly investigating instances of its police officers failing to provide safety, protection, and medical care to detainees who exhibited symptoms of drug overdose.

206. The City of Bristol failed to provide adequate training to its police officers, notwithstanding foreseeable consequences that could result from such an omission of instruction. Given the effect of the opioid epidemic on the population of Sullivan County and the regularity with which BTPD Officers likely confront citizens experiencing drug overdoses, the failure to train BTPD Officers to appreciate the signs of symptoms of a drug overdose and take appropriate action is particularly egregious.

207. The death of a detainee such as Brian Bibee from a drug overdose was a foreseeable result of Defendant City of Bristol's failure to provide adequate training to its police officers, including the individual Defendant Officers.

208. If Defendant Officers Condra, Barker, and Ketron had been trained appropriately

43

to recognize the signs or symptoms of an active drug overdose, especially obvious signs such as those exhibited by Brian Bibee, Brian would likely have received adequate medical care and survived the accidental drug overdose.

209. Plaintiffs claim that the City was deliberately indifferent based on its failure to adequately train its officers to deal with a serious medical need such as Brian Bibee's because it never trained its officers to deal with a serious medical need resulting from a drug overdose. Upon information and belief, Defendant Officers never received any training to recognize the symptoms of a person under the influence of drugs or suffering from a drug overdose.

210. This failure to train and supervise is so obvious as to be comparable to deliberate action, such that a reasonably foreseeable consequence of the de facto policy logically includes the deprivation of a detainee's constitutional rights; in this case, one that led to Brian Bibee's death by accidental overdose.

211. Defendant Chief Austin, who bears responsibility for training and supervising all BTPD Officers, was aware of, but chose to disregard, the unjustifiably high risk of harm that this defacto policy, custom, or practice of deliberate indifference would likely cause to at-risk BTPD detainees, including those particularly susceptible to potentially fatal opioid overdoses.

212. The City of Bristol did not require appropriate in-service training or retraining of officers who encountered detainees exhibiting symptoms of drug overdoses and who may have required special assistance, safety, protection and/or medical assistance.

213. Defendant City of Bristol had actual knowledge through prior incidents and internal communications about drug overdose situations and the medical attention needed, including the use or non-use of Narcan.

214. Upon information and belief, Defendant City of Bristol took no remedial, adverse,

44

or other action regarding the training or re-training of its police officers in recognizing drug overdose situations and the need for medical attention.

215. Defendant City of Bristol is responsible for the policies, procedures and practices implemented through its agents, departments and employees and for any injuries occasioned thereby.

216. The above-described policies and customs demonstrate a deliberate indifference on the part of policymakers of the City of Bristol to the constitutional rights of persons within the City and were the cause of the violations of the rights of Brian Bibee as alleged herein.

217. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the acts and omissions of the City of Bristol were in violation of the constitutional rights of Brian Bibee and the City of Bristol is therefore liable to the Plaintiffs for the death of Brian Bibee.

218. As a direct and proximate result of the actions/omissions of the City of Bristol and Chief Austin, causing the violation of Brian Bibee's Fourth and Fourteenth Amendment rights, Plaintiffs sue the Defendant City of Bristol for violating the constitutional rights of Brian Bibee, and seek any and all damages allowable to Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and to Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as Brian's parents and next of kin, including compensatory damages, pre-judgment and post-judgment interest, and attorney's fees pursuant to 42 U.S.C. § 1988, costs, and discretionary costs.

## VI. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all of the claims asserted in this Complaint so triable.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

A.  That Defendants be served with a copy of this Complaint and be required to answer;

B.  That the Court find that Defendants have engaged in the conduct and statutory and common law violations alleged herein;

C.  That Plaintiffs, as his parents and next of kin, and individually, where appropriate, be awarded such damages as appropriate for all injuries proximately caused by Defendants' actions and that a judgment in their favor be entered;

D.  That Plaintiffs, Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin of Brian Bibee, where appropriate, be awarded compensatory damages in an amount within the jurisdictional limits of this Court;

E.  That Plaintiffs, Hal Haynes Bibee, Sr., as Administrator of the Estate of Brian Sullivan Bibee, and Hal Haynes Bibee, Sr. and Sheron Bibee, individually and as parents and next of kin of Brian Bibee, be awarded punitive damages against the individual Defendants;

F.  That Plaintiffs have and recover costs for this suit, including reasonable attorneys' fees and discretionary costs, as provided by law; and

G.  That Plaintiffs be awarded pre-judgment and post-judgment interest as permitted by common law or applicable statute and

H.  For such other or further relief as may be just and proper.

46

Respectfully submitted, this 17th day of October 2024.

**<u>Hal Haynes Bibee, Sr., Administrator of the</u>**
**<u>Estate of Brian Sullivan Bibee, and</u>**
**<u>Hal Haynes Bibee, Sr. and Sheron Bibee,</u>**

**By counsel:**

<u>/s/ *Van Bunch*</u>
Van Bunch (BPR #012874)
Bonnett Fairbourn Friedman & Balint PC
7301 N. 16th Street, Suite 102
Phoenix, AZ 85020-5266
Telephone: (602) 274-1100
vbunch@bffb.com

and

L. Dante' diTrapano (WVSB #6778) (to be admitted *Pro Hac Vice*)
Amanda J. Davis (WVSB#9375) (to be admitted *Pro Hac Vice*)
Charles F. Bellomy (WVSB #9117) (to be admitted *Pro Hac Vice*)
Calwell Luce diTrapano PLLC
500 Randolph Street
Charleston, West Virginia 25302
(304) 343-4323
(304) 344-3684 (facsimile)
dditrapano@cldlaw.com
adavis@cldlaw.com
cbellomy@cldlaw.com

and

W. Jesse Forbes (WVSB #9956) (to be admitted *Pro Hac Vice*)
Jennifer N. Taylor (WVSB #4612) (to be admitted *Pro Hac Vice*)
Forbes Law Offices, PLLC
1118 Kanawha Blvd., East
Charleston, WV  25301
304-343-4050
304-343-7450 (facsimile)
wjforbes@forbeslawwv.com
jtaylor@forbeslawwv.com